**Danny LITTLE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–SC–000578–MR.

Supreme Court of Kentucky.

Oct. 23, 2008.

As Modified Nov. 12, 2008.

As Modified on Denial of Rehearing Jan. 22, 2009.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Assistant Attorney General, Office of Criminal Appeals, Office of Attorney General, Frankfort, KY, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

Danny Little was convicted of two counts of using a minor in a sexual performance and two counts of promoting a sexual performance by a minor. In accordance with the jury's recommendation, he was sentenced to twenty (20) years each on the use charges and fifteen (15) years each on the promoting charges, to be served consecutively for a total of seventy (70) years' imprisonment. Appealing to this Court as a matter of right, Little argues the circuit court erred by: (1) allowing convictions on both charges in violation of the prohibition against double jeopardy and KRS 505.020; (2) denying his

motion for a directed verdict as to both charges; and (3) allowing the Commonwealth to introduce unduly prejudicial evidence. For the reasons set forth herein, we affirm.

In May of 2004, Summit Engineering contacted the Pikeville Police Department concerning pornographic materials discovered in the locker of an employee, Thaddus Burke. Police recovered material related to child pornography, including three videotapes, numerous photos, magazines, news clippings, and a notebook describing sexual acts. Burke was arrested and a search of his home resulted in the recovery of additional pornographic material, as well as a computer hard drive with pornographic material downloaded from the internet.

Burke's wife, Crystal, viewed portions of the videotapes and identified their daughter, KB, and the family's living room. Crystal also identified Little and Little's son, DL, and daughter, CL. She recognized Little from his face, as well as from a heart-shaped tattoo on his arm. While Crystal confirmed Little occasionally visited their home, she could not recall Little's children ever having been guests.

Little was arrested on May 26, 2004. A search of his home failed to lead to any additional pornographic material. Nor were officers able to locate either a computer or a VCR in Little's home. Little's ex-wife, Melissa, confirmed that she had custody of CL and DL. Further, she indicated Little was allowed only supervised visitation. To Melissa's knowledge, her children had visited the Burkes' home on only one occasion. Following this unauthorized visit, Little's visitation rights were terminated. Melissa also confirmed that KB was not a regular playmate of her children.

At trial, the Commonwealth introduced all three videotapes in their entirety. The first videotape contains various clips of the children, amateurishly spliced together with pornographic material from other sources. This tape includes footage of KB and CL on a toy four-wheeler while in their underwear. It also depicts KB on the Burkes' couch wearing a dress, and includes pictures of the child in various poses, with and without her underwear. KB can be seen trying to cover her face while being filmed without underwear. Further, Little can be seen reaching in to touch her stomach and her leg. The videotape also contains footage of KB and CL in the bathtub; male voices can be heard in the background.

The second videotape includes additional footage of KB and CL in the bathtub at the Burkes' home. Little can be seen assisting them bathe. Burke and Little are overheard giving the girls verbal directions. The camera focuses on their naked genital regions. Another scene occurs in the Burkes' living room. Little is tossing the girls in the air while Burke films the girls' bare buttocks and pubic areas.

The third videotape contains lengthier footage of the incident on the couch. A voice can be heard asking KB to lean back and bring her heels together. Also, Little appears to be trying to spread KB's legs apart while KB is crying, "No." Little's tattoo is visible in this footage. Further, a hand can be seen on at least two occasions reaching in to reposition KB's dress and spread her legs apart as KB continues to resist. At another point, a hand appears to be holding KB's legs down. Finally, this footage includes KB posed on the couch nude.

At trial, Little testified in his defense. While admitting he appeared in the videos, he characterized the incidents as the filming of family situations. Regarding the

bathtub incident, he claimed Crystal Burke had stepped out. As to the footage of KB on the Burkes' couch, Little claimed he was outside drinking beer during most of the filming. He admitted he came in and tickled KB on the stomach and may have touched her leg, but denied trying to pose the child. He also denied any knowledge as to what Burke was focusing the camera on during any of the incidents. While he admitted he had suspicions of Burke's interest in child pornography, he denied ever seeing the videotapes. Finally, Little admitted that he brought his children to the Burkes' home in violation of the limitations on his visitation rights.

With respect to KB, the jury was instructed on one count of using a minor in a sexual performance and one count of promoting a sexual performance by a minor. The use charge stems from the footage in which Little is seen tossing the girl in the air as Burke films her pubic area. The promotion charge arises from the incident on the couch.

The jury was likewise instructed on one count of using a minor in a sexual performance and one count of promoting a sexual performance by a minor as to CL. The Commonwealth argued that Little used CL in a sexual performance when he consented to her being filmed on multiple occasions in various stages of undress. The promotion charge arises from the filming of CL in the bathtub.

The jury found Little guilty on all four counts. This appeal followed.

■ Little first argues his convictions for using a minor in a sexual performance and promoting a sexual performance by a minor amount to a violation of the double jeopardy clauses of both the state and federal constitutions, and of the limitations set out in KRS 505.020 for the prosecution of multiple offenses. Little asserts that the Commonwealth relied on the same facts to establish the elements of both statutes. Thus, Little argues that in the context of the facts of this case, the statutes do not require proof of distinct facts.

■ "The double jeopardy clause of the Fifth Amendment to the United States Constitution provides in pertinent part that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky.1996). Section 13 of the Kentucky Constitution contains a virtually identical clause. *Id.* In *Burge*, this Court returned to the double jeopardy analysis set out in *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). 947 S.W.2d at 811. Under *Blockburger*, when the same act or transaction violates two statutory provisions, we must determine "whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. The focus of the analysis is on the proof necessary to establish "the *statutory* elements of each offense, rather than on the actual evidence presented at trial." *Polk v. Commonwealth*, 679 S.W.2d 231, 233 (Ky.1984), citing *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). So long as "each statute requires proof of an additional fact which the other does not, the offenses are not the same under the *Blockburger* test." *See Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265 (internal citations omitted).

We recently considered an identical argument in *Clark v. Commonwealth*, 267 S.W.3d 668 (Ky.2008). Clark was convicted of one count of promoting a sexual performance by a minor and one count of using a minor in a sexual performance, among other charges. These convictions stemmed from an encounter, arranged by Clark, wherein he directed a minor boy to lie on top of his minor daughter. He then

ordered the boy to simulate sexual intercourse as pornographic movies played in the background.

In considering Clark's double jeopardy claim, we noted that "an overlap of proof does not, of its own accord, establish a double jeopardy violation. However, an inability to point to the requirement of at least one mutually exclusive fact in existence does." *Id.* at 677 (internal citations omitted). In *Clark*, we rejected the Commonwealth's assertion that mutually exclusive facts existed under the circumstances presented by stating:

> The Commonwealth asserts that the focus of the "promotion" statute is the direction of the sexual performance, while the focus of the "use" statute is the engagement in the performance. However, as the above discussion clearly demonstrates, the Commonwealth's argument points to a distinction without a difference. The "use" statute requires only that the offender either passively ("consent") or actively ("employ") facilitate a minor's participation in a visual representation of a sexual performance before an audience. And, in effect, *under the facts in question,* the promotion statute, KRS 531.320 prohibits the same conduct. (emphasis added).

*Clark,* 668 S.W.3d 677 at (internal citation omitted).

The present charges are readily distinguishable because they arise from multiple incidents memorialized on videotape. Little was not prosecuted twice for the same conduct, but for distinct actions.

A person uses a minor in a sexual performance when he "employs, consents to, authorizes or induces a minor to engage in a sexual performance." KRS 531.310(1). Little consented to Burke filming his daughter, CL, in various stages of undress, both while on the four-wheeler and while being tossed in the air. Little used, or employed, KB in a sexual performance when he tossed her in the air while Burke filmed her bare buttocks.

■ A person promotes a sexual performance by a minor when, "knowing the character and content thereof, he produces, directs, or promotes any performance which includes sexual conduct by a minor." KRS 531.320. "The 'promotion' statute is violated when one either actively or passively prepares, agrees, or brings forth through their efforts the visual representation of a minor in a sexual performance before an audience." *Clark,* 267 S.W.3d at 678. By filming KB naked on the couch while physically positioning her in various poses, Little was directing a sexual performance by a minor. He promoted a sexual performance by CL when he allowed her to be filmed while naked in the Burkes' bathtub. His verbal directions to CL assisted Burke in the organizing, or production, of footage containing sexual conduct.

The convictions in this case do not arise from a single course of conduct. Rather, they are based on distinct actions as to separate victims. Thus, the rule prescribed in *Blockburger* is not implicated, and no double jeopardy violation occurred when Little was convicted under both KRS 531.310 and KRS 531.320. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182.

■ Next, Little argues he was entitled to a directed verdict as to both offenses. In particular, he argues the Commonwealth failed to produce any evidence of his intent to sexually exploit the children. Little claims he had no knowledge of where Burke was focusing the camera. Further, he claims he had no knowledge that Burke possessed pornographic material and that police recovered no pornographic material from his home. He characterizes the nature of the incidents as

merely the filming of family scenes. Under these circumstances, Little argues the Commonwealth failed to introduce even a scintilla of evidence to show his intent to violate either statute.

In considering a motion for directed verdict,

[T]he trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id., citing Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983).

Little was convicted under KRS 531.310 and KRS 531.320. Both statutes require a showing of the defendant's intent. *See Mattingly v. Commonwealth*, 878 S.W.2d 797, 800 (Ky.App.1993) (intent is an element under KRS 531.310); *Purcell v. Commonwealth*, 149 S.W.3d 382, 389 (Ky.2004) (intent is a requirement under KRS 531.320). As to intent, this Court has held that it "may be inferred from the actions of a defendant or from the circumstances surrounding those actions." *Marshall v. Commonwealth*, 60 S.W.3d 513, 518 (Ky.2001). Likewise, intent may be inferred from the defendant's knowledge. *Id.* Finally, we are mindful that a "person is presumed to intend the logical and probable consequences of his conduct[.]" *Par-*

*ker v. Commonwealth*, 952 S.W.2d 209, 212 (Ky.1997).

The evidence was sufficient to overcome Little's motion for a directed verdict. With respect to KB, the circumstances of the video footage establish Little's intent. Little is tossing KB in the air while Burke is filming her bare buttocks. It is wholly unbelievable that Little would not be aware Burke was filming the child's genital area given the vantage point Burke must have assumed in order to capture the video. Likewise, Little himself filmed KB on the couch. He pushed her legs apart and tickled her stomach. A reasonable juror is entitled to conclude that Little intended these actions.

The circumstantial evidence likewise supports a finding that Little intended the offenses against his daughter, CL. He testified that he suspected Burke was interested in pornography, yet he nonetheless brought CL to Burke's home in violation of his visitation restrictions. He allowed CL to be videotaped while naked on a four-wheeler. He tossed a partially naked CL in the air while Burke filmed her buttocks from below. While CL is naked in the bathtub, Little can be overheard giving her verbal directions. Again, these circumstances reasonably support the conclusion that Little intended to use CL in a sexual performance and to promote such performances by CL.

When this evidence, and the inferences that can be drawn from it, are viewed in a light most favorable to the Commonwealth, we find it sufficient to support a finding as to the intent element necessary for each statute. The trial court did not err in denying Little's motion for a directed verdict.

Little's final argument concerns the trial court's decision to allow the introduction of all three videotapes in their

entirety. Little argues that, with the exception of the portions dealing with his children and possibly those dealing with KB on the couch, the remaining portions were inadmissible. He notes that the videotapes contained spliced footage, both still photos and motion pictures, of unknown persons. Further, Little argues there was no evidence that he had either seen this footage or knew it existed. Finally, Little argues that, contrary to *Partin v. Commonwealth*, 918 S.W.2d 219 (Ky. 1996), the trial court made no attempt to determine the probative value of these portions, nor did the court weigh the probative value against any undue prejudice.

Little characterizes the footage depicting graphic child pornography as highly disturbing and repulsive. While he concedes the videotapes in their entirety were relevant as to Burke, he argues their undue prejudice outweighed the probative value, if any, when used against him. Under these circumstances, Little argues the decision to allow the Commonwealth to admit these portions of video was arbitrary and unreasonable.

As we noted in *Partin*, the admissibility of evidence must be determined pursuant to Kentucky Rule of Evidence (KRE) 401 and KRE 403. *Id.* at 222. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* KRE 401. "Relevant evidence in a criminal case is any evidence that tends to prove or disprove an element of the offense." *Harris v. Commonwealth*, 134 S.W.3d 603, 607 (Ky.2004) (citation omitted). For evidence to satisfy the test for relevance, "only a slight increase in probability must be shown." *Id.* (citation omitted).

However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice[.]" *See* KRE 403. Thus, in determining admissibility of evidence, it is necessary to make an assessment as to the probative worth of the evidence; to make an assessment as to the probable impact of the evidence (i.e., undue prejudice); and to determine whether the probative worth is substantially outweighed by the undue prejudice of the evidence. 918 S.W.2d at 222. A determination by the trial court that the probative value of the evidence is not outweighed by the prejudice, if any, is reviewed for an abuse of discretion. *Id. See also Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

In light of the offenses charged, we find Little's claim that the videotapes were either irrelevant or unduly prejudicial to be without merit. In order to establish that Little was complicit with Burke in promoting a sexual performance by a minor, the Commonwealth was required to show both that Burke was guilty of the offense and that Little participated in ways intended to promote or aid Burke in committing the offense. Little concedes that all three videotapes, in their entirety, were relevant as to Burke's guilt, and we agree. As discussed previously, Little's intent can be inferred from his actions, the circumstances surrounding those actions, and the knowledge he had at the time he took those actions. Finally, we note that the videotapes, in their entirety, rebut Little's claim that the film excerpts were for family purposes. Under these circumstances, we reject Little's argument that the videotapes were not relevant to the charges brought against him.

Nor do we accept Little's argument that the evidence was unduly prejudicial. We need not dispute Little's characterization

of the evidence as repulsive. The fact that the material on the videotapes is disturbing and repulsive follows from the nature of the crime and does not make the evidence inadmissible. *See Clark v. Commonwealth,* 833 S.W.2d 793, 794 (Ky.1991) ("[R]elevant pictures are not rendered inadmissible simply because they are gruesome and the crime is heinous."). Under these circumstances, the trial court did not abuse its discretion in allowing the Commonwealth to introduce the three videotapes in their entirety.

For the foregoing reasons, the judgment of the Pike Circuit Court is affirmed.

All sitting. All concur.