# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2019-SC-0649-MR

DANIEL SCOTT NEAL                                APPELLANT

             ON APPEAL FROM DAVIESS CIRCUIT COURT
V.             HONORABLE JOSEPH W. CASTLEN, III, JUDGE
                        NO. 12-CR-00646

COMMONWEALTH OF KENTUCKY                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

A Daviess Circuit Court jury convicted Appellant, Daniel Scott Neal, of twelve counts of possession of a matter portraying a sexual performance by a minor under Kentucky Revised Statute ("KRS") 531.335. The jury recommended a sentence of two years' imprisonment on each count to run consecutively. The trial court sentenced Neal to a total of twenty years' imprisonment, the statutory maximum. *See* KRS 532.110(1)(c). Neal now appeals as a matter of right, arguing multiple points of error. *See* KY. CONST. Section 110(2)(b). After careful review of the record and arguments of the parties, we affirm the Daviess Circuit Court.

## I.  BACKGROUND

In May 2012, the Office of the Attorney General noticed activity it deemed suspicious from a certain IP address. Investigators considered the activity suspicious because of the number of files downloaded and the similarity of

those files to known child pornography. The files with which they were concerned were located in a "shared" folder of a peer-to-peer file-sharing network called Emule. Investigators could not see the contents of the files because the files could not be downloaded from the shared folder. However, investigators with the Attorney General's Office were able to compare the files' "hash values" to the "hash values" of known child pornography files in a national law enforcement database. The hash value acts as "digital DNA" for that specific file and therefore aids in the identification of child pornography files even if the file name has been changed. Of the 607 files in the shared folder, investigators determined that five of them matched known child pornography files. Further investigation determined that the IP address belonged to Neal.

On May 17, 2012, Tom Bell, a cybercrimes investigator with the Office of the Attorney General, executed a search warrant on Neal's home. Pursuant to the search warrant, a desktop computer, laptop computer, external hard drives, and CDs and DVDs used for data storage were seized. While at Neal's home, Bell made contact with Neal by telephone. Neal, who was a teacher and track and cross-country coach at Hancock County High School, was at a state meet for one of the teams he coached. Neal denied knowledge of the child pornography but acknowledged he had used Emule for file sharing before

uninstalling it. Neal further stated that he was the sole user of the desktop computer but that he and his wife Barbara[1] shared the laptop.

Investigators analyzed the contents of the various devices seized from Neal's home, finding a total of over 400 items of suspected child pornography on the desktop and laptop computers as well as the external hard drive. On November 12, 2012, a Daviess County grand jury indicted Neal on thirty-nine counts of possession of a matter portraying a sexual performance by a minor for videos that were found in allocated space on the laptop computer.[2] The videos were found in folders created under the user account "Scott," which, according to Barbara, was password-protected. Barbara did, however, admit at trial that she knew the password at one time but had since forgotten it. The remaining items of suspected child pornography were located in unallocated space, so they could not be recovered. Before trial, the Commonwealth dismissed twenty-seven counts of the indictment so that trial proceeded on only twelve counts.

Of the twelve videos upon which Neal went to trial, Bell opined that eight were written to the hard drive of the laptop on April 7, 2012, at 5:39 p.m., and four were written to the hard drive of the laptop on May 3, 2012, at 9:42 p.m. The Commonwealth presented evidence that Barbara was at work on May 3,

---

[1] Scott and Barbara Neal were married during the time period at issue in this case. However, at the time of Neal's trial, the two were divorced. We refer to Barbara Neal as Scott Neal's ex-wife in the remainder of this Opinion.

[2] Allocated space contains active files on a computer that have not been deleted. Once a file is deleted from the computer, it moves from allocated space to unallocated space, where it remains until the space on the drive is written over.

3

2012, at the time when the four videos were written to the hard drive. Neal presented evidence that he was at his mother's house on April 7, 2012, when the eight videos were written to the hard drive.

Bell testified that the videos ranged in length from less than thirty seconds to over an hour. During trial, the Commonwealth played excerpts of each of the videos for the jury which ranged in length from about thirty seconds to approximately two minutes. Neal never disputed that the videos contained images of child pornography.

The Commonwealth also presented evidence that investigators located hundreds of encrypted files on the laptop computer. However, because they were encrypted, the files could not be recovered or examined. Neal acknowledged during his testimony to encrypting files, specifically student records and personal financial documents. Bell also found a copy of the August 2009 edition of "Modern Boylover Magazine" in PDF format. Bell read the titles of the articles contained in the magazine to the jury including, "Top Ten Reasons Why Boys Should Get an Adult Friend"; "The Joys of Drawing Boys"; "The Expatriate Boylover Living and Working in a Foreign Country"; "Ten Boylove Novels You Must Read Before You Die (Or Go To Jail)"; "Making the Case for Full Disk Encryption"; and "The Gross Indecency of Michael Jackson." The magazine was located on the desktop computer in a previous installation of Windows under the "Scott" user account in a folder with various school-related files. Several of the encrypted files contained "MBM" in the file name. Although the Commonwealth posited that the "MBM" stood for "Modern Boylover

4

Magazine," Neal testified that he may have used the initials "MBM" on documents related to the book "To Kill a Mockingbird."

On the laptop computer, Bell found evidence of a school-issued iPad that had previously been synced to that computer. Although the iPad was not recovered during the execution of the search warrant, Bell was able to analyze its contents because it was backed up to the laptop. The iPad was registered to an email address of "scott.neal" at the Hancock County school district. On the iPad, Bell found traces of the following internet searches: "privacy issues – deleted files can be recovered"; "how to safely secure a hard drive from forensic examination"; and a news story about a man going to prison after "accidentally" downloading child pornography.

Finally, on the desktop computer, Bell found items related to fifty-nine internet newsgroups under an old installation of Windows. The newsgroups were found in a program registered to "Daniel Neal," and the topic of discussion in many of the newsgroups was young boys. Bell found evidence that the "Daniel Neal" account had sent a message to at least one of the newsgroups explaining how to share files in separate parts in order to avoid detection. Neal admitted to previously interacting with newsgroups about Ford Mustangs and high school cross-country but denied knowledge of the newsgroups found during the investigation.

Neal also presented evidence to the jury from multiple witnesses that he had a good reputation in the community. The trial court, however, prevented those witnesses from testifying to their personal opinions of Neal's character.

5

Neal's cousin testified that she witnessed Barbara watching homosexual pornography on the laptop, but the trial court prevented her from testifying to any statements Barbara may have made to her about Barbara's "interest" in homosexual pornography.

After hearing all of the evidence, the jury found Neal guilty of all twelve counts of possession of a matter portraying a sexual performance by a minor. The jury recommended a sentence of two years on each count to run consecutively for a total of twenty-four years. The trial court sentenced Neal to the statutory maximum of twenty years in prison. Further facts will be discussed as necessary to our analysis.

## II.  ANALYSIS

On appeal, Neal argues the trial court erred in numerous ways. He alleges the trial court erred: (1) in allowing the Commonwealth to play the pornographic videos for the jury; (2) in failing to dismiss the indictment; (3) in allowing the Commonwealth's expert to testify; (4) in admitting certain other acts evidence under Kentucky Rule of Evidence ("KRE") 404(b); (5) in excluding evidence of his character; (6) in excluding evidence of his ex-wife's supposed "obsession with homosexual male pornography;" (7) in denying his motion for a directed verdict; and (8) in failing to give the jury an innocent-possession instruction. We will review each of these arguments in turn.

### A. The trial court did not err in admitting the pornographic videos into evidence.

Neal's first allegation of error lies in the trial court's admission of the actual pornographic videos with which he was charged in the indictment. This

6

issue was preserved by Neal's multiple pretrial motions to exclude the playing of the videos to the jury and his motion for a new trial. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Little v. Commonwealth*, 272 S.W.3d 180, 187 (Ky. 2008). A trial court abuses its discretion only where its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Neal argues that he stipulated that the videos with which he was charged contained child pornography. He further argues that because he stipulated to their content, showing the videos themselves had "virtually no probative value at all" and that "the prejudicial effect is so great that it is immeasurable." He argues that the videos were inadmissible under KRE 403 which allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of undue prejudice."

Under KRE 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under KRE 402, "[a]ll relevant evidence is admissible" unless otherwise excluded by the law or our rules of evidence. "Evidence which is not relevant is not admissible." KRE 401. However, under KRE 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless

presentation of cumulative evidence." Unduly prejudicial evidence has been defined as evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Richmond v. Commonwealth,* 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth,* 367 S.W.3d 609, 615 (Ky. App. 2012)) (internal quotation marks omitted).

We first note that there is no stipulation in the record. Neal argued throughout the proceedings that he was not contesting the content of the videos, but any stipulation must be agreed upon by both parties. Furthermore, even if offered, "the Commonwealth is not obligated to accept an offer of stipulation just because it has been presented." *Helton v. Commonwealth,* 595 S.W.3d 128, 136 (Ky. 2020). Instead,

> [t]his Court has repeatedly held that "a stipulation offer cannot provide the foundation for a KRE 403 argument on appeal" because "the prosecution is permitted to prove its case by competent evidence of its own choosing, and the defendant may not stipulate away the parts of the case that he does not want the jury to see."

*Pollini v. Commonwealth,* 172 S.W.3d 418, 424 (Ky. 2005) (quoting *Johnson v. Commonwealth,* 105 S.W.3d 430, 438-39 (Ky. 2003)); *see also Payne v. Commonwealth,* 623 S.W.2d 867, 877 (Ky. 1981) ("This court knows of no rule or principle of law that requires the Commonwealth's Attorney to try his case by stipulation."). As we stated in *Helton,* "even if [Neal]'s arguments … could be viewed as an offer to stipulate to the content of the videos, the Commonwealth

was still entitled to present relevant evidence of its choosing, including the videos. As always, the Commonwealth's evidence remains subject to KRE 403." 595 S.W.3d at 136.

In order to determine the relevancy and probative value of the proffered evidence, we must first understand what the Commonwealth needed to prove to secure a conviction for the charged crime. A person is guilty of possession of a matter portraying a sexual performance by a minor "when, having knowledge of its content, character, and that the sexual performance is by a minor, he... [k]nowingly has in his...possession or control any matter which visually depicts an actual sexual performance by a minor person." KRS 531.335(1)(a). As such,

> the essential elements are (1) knowingly having possession or control (2) of a visual depiction (3) of an actual sexual performance by a minor, and (4) having knowledge of its contents. The statute contains two separate mental states: the defendant must know the content of the images and videos (i.e., that they depict a sexual performance by a minor) and the defendant must knowingly possess the images or videos.

*Crabtree v. Commonwealth*, 455 S.W.3d 390, 396 (Ky. 2014).

In this case, the Commonwealth did not seek to admit each of the videos in their entirety. It only sought to admit portions of each of the videos. The trial court reviewed those videos in chambers before ruling on their admissibility. The court then found the videos were the most relevant evidence the Commonwealth could offer to prove that the videos did, in fact, contain an actual sexual performance by a minor. The trial court further found that the probative value of the videos was not substantially outweighed by the danger of undue prejudice to Neal.

9

We cannot hold the trial court abused its discretion in making this determination and allowing the videos to be played to the jury. We first note that although the Commonwealth asked during the trial that the videos be sealed in the record and made available for appellate review, the videos themselves were not included in the record on appeal. "It has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). There is no doubt in this case that "the videos themselves were highly probative of the fact that they did, in fact, contain child pornography." *Helton*, 595 S.W.3d at 136. "While the very nature of child pornography videos renders them inherently prejudicial," the videos were the best evidence to prove at least some of the elements of the offense. As such, in this case, the risk of undue prejudice did not outweigh the probative value of the videos, and the trial court did not abuse its discretion in allowing the videos to be shown to the jury.

**B. The trial court did not err in refusing to dismiss the indictment.**

Neal next argues that the trial court erred in denying his motion to dismiss the indictment. This issue is preserved by Neal's pretrial motions to dismiss and post-trial motion for a new trial. Neal argues that the trial court's denial of his motion to dismiss denied him his rights to due process and fundamental fairness.

In arguing that the trial court should have dismissed the indictment pending against him, Neal emphasizes the timeline of the events in his

10

prosecution. Although not dispositive of this issue, a limited understanding of the timeline is necessary to understand his argument.

The Office of the Attorney General first noticed suspicious activity from Neal's IP address in May 2012 and began its investigation. Neal was thereafter indicted on November 20, 2012. The case remained pending against him for several years. In May 2018, Bell stated in a report, "In my review I did not find any files that indicated that the user interacted with the video files listed in the indictment." Based on this report, Neal filed a motion to dismiss the indictment, arguing that the Commonwealth could not muster proof beyond a reasonable doubt to convict him. Subsequent to Neal's motion to dismiss, Bell wrote a supplemental report in which he stated that he re-analyzed the original data using new software and found evidence that the files had been interacted with. Then, on April 26, 2019, Neal filed another motion to dismiss the indictment and motion to exclude Bell from testifying. The trial court entered a written order denying Neal's motions to dismiss and exclude Bell's testimony finding that a continuance of the trial was an adequate remedy. The trial proceeded in July 2019.

"This Court has consistently held that a trial judge has no authority to weigh the sufficiency of the evidence prior to trial or to summarily dismiss indictments in criminal cases." *Commonwealth v. Bishop*, 245 S.W.3d 733, 735 (Ky. 2008) (citing *Commonwealth v. Hayden*, 489 S.W.2d 513, 516 (Ky. 1972); *Barth v. Commonwealth*, 80 S.W.3d 390, 404 (Ky. 2001); *Flynt v.*

11

*Commonwealth,* 105 S.W.3d 415, 425 (Ky. 2003)). There are only limited circumstances within which a trial court is

> permitted to dismiss criminal indictments in the pre-trial stage. These include the unconstitutionality of the criminal statute, *Hayden,* 489 S.W.2d at 514–515; prosecutorial misconduct that prejudices the defendant, *Commonwealth v. Hill,* 228 S.W.3d 15, 17 (Ky. App. 2007); a defect in the grand jury proceeding, *Partin v. Commonwealth,* 168 S.W.3d 23, 30–31 (Ky. 2005); an insufficiency on the face of the indictment, *Thomas v. Commonwealth,* 931 S.W.2d 446 (Ky. 1996); or a lack of jurisdiction by the court itself, RCr 8.18.

*Id.* None of those limited circumstances exist in this case. "[I]t [is] not the province of a trial judge to evaluate evidence in advance in order to decide whether a trial should be held…. [T]he proper time for such an evaluation is upon motion for a directed verdict." *Commonwealth v. Isham,* 98 S.W.3d 59, 62 (Ky. 2003) (citing *Commonwealth v. Hicks,* 869 S.W.2d 35, 37 (Ky. 1994)). Accordingly, the trial court did not err in denying Neal's motions to dismiss the indictment.

### C. The trial court did not err in allowing the Commonwealth's expert witness to testify.

Neal's next claim of error lies in the trial court's refusal to disqualify the Commonwealth's expert witness, Bell, from testifying. This argument is closely tied to Neal's previous argument regarding the trial court's refusal to dismiss the indictment. In essence, Neal argues that because Bell "diametrically change[d] his testimony," his testimony should have been disqualified as unreliable. This issue is preserved by Neal's pretrial motion to exclude and post-trial motion for a new trial.

12

This Court reviews a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004). Trial courts have a "considerable breadth of discretion…in performing their gate keeping function under KRE 702." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 39 (Ky. 2004) (citing *Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483, 489 (Ky. 2002), *vacated on other grounds by Ford Motor Co. v. Smith*, 538 U.S. 1028 (2003)). Further, "a reviewing court must 'give great deference to the trial court's ruling and reverse only in circumstances of clear abuse.'" *Id.* (quoting *Sand Hill Energy, Inc.*, 83 S.W.3d at 489).

This Court has made clear,

> Expert opinion evidence is admissible so long as (1) the witness is qualified to render an opinion on the subject matter, (2) the subject matter satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403, and (4) the opinion will assist the trier of fact per KRE 702.

*Stringer v. Commonwealth*, 956 S.W.2d 883, 891 (Ky. 1997). In turn, KRE 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
> (1) The testimony is based upon sufficient facts or data;
> (2) The testimony is the product of reliable principles and methods; and
> (3) The witness has applied the principles and methods reliably to the facts of the case.

Neal argues that because Bell changed his opinion, the opinion was not reliable and therefore should have been excluded. However, the reliability determination under *Daubert* and KRE 702 is not a credibility determination. As we have previously stated, "the consideration of reliability entails an assessment into the validity of the reasoning and methodology upon which the expert testimony is based." *Gregory*, 136 S.W.3d at 39 (internal quotation marks and citation omitted). The trial court's gatekeeper function in this area is "not designed or intended to assess the weight of the testimony; this role is reserved for the jury." *Epperson v. Commonwealth*, 437 S.W.3d 157, 165 (Ky. App. 2014). "It is only where the testimony is so incredible on its face as to require its rejection as a matter of law that the jury will not be permitted to consider it." *Daulton v. Commonwealth*, 220 S.W.2d 109, 110 (Ky. 1949).

In this case, the trial court denied Neal's motion to exclude Bell's testimony finding that "with technology advancements and software changes, it is not uncommon for new evidence to be developed in this type of case." Neal's arguments did not go to "the validity of the reasoning and methodology upon which" Bell's testimony was based. *See Gregory*, 136 S.W.3d at 39. Instead, his arguments focused on Bell's credibility, given that he changed his opinion after receiving Neal's motion to dismiss based on his prior opinion. This is not a sufficient reason for the trial court to exclude Bell's expert testimony. Further, Bell's testimony was not "so incredible on its face as to require its rejection as a

14

matter of law." *Daulton,* 220 S.W.2d at 110. Accordingly, the trial court did not abuse its discretion in denying Neal's motion to exclude Bell's testimony.

## D. The trial court did not err in admitting KRE 404(b) evidence.

Neal next argues that the trial court erred in admitting various pieces of KRE 404(b) evidence. His brief to this Court does not specify any particular piece of evidence to which he is objecting but instead argues "the trial court erred in its admission of a myriad of uncharged, unrelated and mischaracterized documents and testimony." The record contains two notices by the Commonwealth of its intention to introduce KRE 404(b) evidence. It also contains a motion in limine and two objections to the introduction of KRE 404(b) evidence filed by Neal. Finally, it includes a memorandum filed by each party in support of its position. Subsequent to the filing of these documents and a hearing,[3] the trial court entered a seven-page order denying Neal's objections to the KRE 404(b) evidence. We review a trial court's decision to admit KRE 404(b) evidence for an abuse of discretion. *Commonwealth v. King,* 950 S.W.2d 807, 809 (Ky. 1997).

Through its KRE 404(b) notices, the Commonwealth provided notice that it sought to introduce the following KRE 404(b) evidence:

(1) That Neal had other uncharged images of child pornography on devices seized from his residence;

---

[3] The written record indicates that a hearing was held; however, no pretrial hearing recordings are included in the record on appeal.

15

(2) That Neal was a "member" and interacted with various "newsgroups" that were involved with child pornography;

(3) That numerous encrypted files were found on Neal's devices;

(4) That electronic searches were discovered in which Neal used certain keywords to search for child pornography on his devices;

(5) That certain Emule artifacts found on Neal's devices indicate that he downloaded child pornography;

(6) That artifacts of certain files were found on Neal's devices;

(7) That a magazine entitled "Modern Boylover Magazine" was found on one of Neal's devices; and

(8) That Neal had searched the following on his school-issued iPad:

  a. "privacy issues: deleted files can be recovered?";

  b. "how to safely secure your hardrive [sic] from forensic examination – Google search";

  c. "Man Downloads Child Pornography 'Accidentally,' Faces Up to 20 Years in Prison";

  d. "how to safely secure your hardcore [sic] from forensic examination"; and

  e. "how to safely secure your hardrive [sic] from forensic examination."

Because Neal did not specify which item or items of KRE 404(b) evidence he alleges were admitted in error, we will only discuss the evidence generally and do so relatively briefly.

KRE 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

16

conformity therewith. It may be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). It may also be admissible if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2). KRE 404(b) is exclusionary in nature. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994).

In order to determine if other bad acts evidence is admissible, the trial court should use a three-prong test: (1) Is the evidence relevant for a purpose other than criminal disposition? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect? *Purcell v. Commonwealth*, 149 S.W.3d 382, 399-400 (Ky. 2004).

In his briefs to this Court, Neal argues almost exclusively that the proffered KRE 404(b) evidence was not inextricably intertwined with the charged offenses such that its exclusion would seriously adversely affect the Commonwealth's case. Being inextricably intertwined, however, is only one reason that KRE 404(b) evidence can be admitted at trial. Even if the evidence is not inextricably intertwined, it may still be admissible at trial if it is relevant for another purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). In this case, the Commonwealth argues that the proffered evidence is relevant to

17

Neal's knowledge of the items found on his computer, his intent to possess them, and his lack of mistake in possessing them.

The trial court overruled all of Neal's objections to the proffered evidence. It found that the encryption programs and internet searches regarding encryption were relevant to show that Neal attempted to conceal his possession of child pornography. The court found the "Modern Boylover Magazine" included an article advising its readers to encrypt files in order to evade detection by law enforcement, and that the magazine and its articles were relevant to show lack of accident or to counter an assertion that someone else downloaded the files. It further found that evidence of the newsgroups was relevant to counter a defense that Neal was unaware the files contained child pornography, as most of the charged files contained minor males engaged in conduct with adult men, and the newsgroups focused on minor males. In determining probativeness, the trial court found that these items were all found on devices owned by or issued specifically to Neal. Finally, the court found the evidence was not overly prejudicial compared to its probative value. The trial court, in its order, stated it would provide a limiting instruction to the jury. During the trial, the court provided a limiting instruction to the jury regarding testimony about other child pornography videos located on the computers but did not, and was not asked to, provide an instruction on any of the other pieces of KRE 404(b) evidence.

The trial court did not abuse its discretion in admitting the various pieces of KRE 404(b) evidence. Each of the items was relevant to prove

knowledge, intent, or absence of mistake. Evidence of each was sufficiently probative of Neal's commission of the acts as all of the evidence was found on devices under his user name or on devices issued specifically to him from his employer. Finally, the probative value of these items was high, and such probative value was not substantially outweighed by the evidence's prejudicial effect.

### E. The trial court erred in excluding certain character evidence of Neal, but that error was harmless.

Neal next argues that the trial court erred in excluding evidence of his personal and professional accomplishments, overall good character, and reputation for honesty and trustworthiness. We review the trial court's decision to exclude evidence for an abuse of discretion. *Little*, 272 S.W.3d at 187.

During Neal's opening statement, the trial court ruled that although Neal could introduce character evidence by way of testimony as to his general reputation in the community or by testimony in the form of an opinion, he could not introduce evidence of specific instances of his conduct. During the trial, Neal testified, and the Commonwealth attacked his credibility. After he testified, Neal called three witnesses to testify to his good character: Jerry Smith, Denise Hayden, and Thomas McGahan. Each witness testified as to Neal's reputation in the community but was not permitted to testify any further. Outside the presence of the jury, each witness testified to his or her personal opinion of Neal's good character by avowal. McGahan also specifically testified to Scott's trustworthiness. During the avowal testimony, only Hayden testified to a specific instance of conduct. She testified to an instance when a

19

track team member unexpectedly lost a parent. Scott went to the funeral home, fixed the boys' ties, and generally supported them through the loss.

Under KRE 103(a)(2), an error excluding evidence is not preserved unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." As we explained in *Henderson v. Commonwealth,* "[t]o preserve a trial court's ruling for appeal ... the substance of the excluded testimony must be provided to the trial court" by way of an offer of proof "adducing what that lawyer expects to be able to prove through a witness's testimony." 438 S.W.3d 335, 339–40 (Ky. 2014) (citing KRE 103(a)(2)). We further explained that the offer of proof serves two purposes: it "provides the trial court with a foundation to evaluate properly the objection based upon the actual substance of the evidence[;]" and it "gives an appellate court a record from which it is possible to determine accurately the extent to which, if at all, a party's substantial rights were affected." *Id.*

Because Neal's argument to this Court is only partially preserved by the avowal testimony, and he did not request palpable error review, we will only review whether the specific testimony elicited during the offer of proof was excluded in error.

Under KRE 404(a), generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." However, "evidence of a pertinent trait of character or of general moral character offered by an accused" is admissible. KRE 404(a)(1). KRE 405 governs how character evidence can be proven. "In all

cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation in the community or by testimony in the form of opinion." KRE 405(a). Specific instances of a person's conduct, however, are only admissible "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." KRE 405(c). Further,

> [t]he credibility of a witness may be … supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

KRE 608(a).

In the case before us, Neal elicited testimony on avowal of three witnesses' personal opinions of his general good moral character. Under KRE 404 and 405, this testimony was erroneously excluded. He also elicited testimony of McGahan's personal opinion of his trustworthiness. "[E]vidence of a particular character trait will be relevant only if it tends logically to prove that [the defendant] did not commit the specific crime charged. Thus, for example, character for honesty is relevant to prove innocence of theft, fraud, and similar crimes." *Crabtree v. Commonwealth*, 455 S.W.3d 390, 414 (Ky. 2014) (internal citations, quotation marks, and brackets omitted). Trustworthiness is not relevant to the charge of possession of a matter portraying a sexual performance by a minor. *See id.* However, because Neal testified on his own behalf and his credibility was attacked, his character for truthfulness was at issue. *See id.* ("If the Commonwealth had attacked [the defendant's]

21

truthfulness to undermine a statement he had made, or if he had taken the stand, then his character for truthfulness would be at issue and thus relevant and pertinent.") Therefore, under KRE 608, the trial court erred in excluding McGahan's personal opinion of Neal's trustworthiness.

Finally, Neal elicited testimony of a specific instance of his conduct that occurred after a track team member lost a parent. The character traits evidenced by this episode were not "an essential element of a charge, claim, or defense," and therefore, the trial court did not err in excluding that testimony. KRE 405(c).

Having found the trial court erred in excluding some of Neal's proffered character evidence, we must now determine whether that error was harmless under Rule of Criminal Procedure ("RCr") 9.24. Under the harmless error rule, errors may only be used as a basis to reverse or vacate a judgment if we cannot "say with fair assurance that the judgment was not substantially swayed by the error." *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013). In this instance, the erroneously excluded evidence consisted only of personal opinion testimony from witnesses who were clearly biased in favor of Neal. The jury was, however, permitted to hear about Neal's reputation in the community as having a good moral character. Given all of the other evidence elicited at Neal's trial, we can "say with fair assurance that the judgment was not substantially swayed by the error." *Id.*

**F. The trial court did not err in excluding evidence of Neal's ex-wife's supposed "obsession with homosexual male pornography."**

Neal next argues that the trial court erred in excluding evidence of his ex-wife's "obsession with homosexual male pornography." He argues that this evidence was relevant and material to his defense. We review the trial court's decision for an abuse of discretion. *Little*, 272 S.W.3d at 187.

Neal's ex-wife, Barbara Neal, testified on behalf of the Commonwealth. During cross-examination, defense counsel asked her if she watched homosexual male pornography on the computers, whether she "ha[d] a thing for" homosexual male pornography, whether she had a fetish, and whether she ordered homosexual male pornography on pay-per-view. She denied all of these activities. She did, however, admit to watching, with Neal, a certain television show that was about "the homosexual lifestyle."

During Neal's case-in-chief, Melissa Bruce, his first cousin, testified. She told the jury about an instance when she witnessed Barbara watching homosexual male pornography on the laptop computer. Barbara did not know Bruce saw this. Defense counsel then asked Bruce, "Did Barbara ever express to you any interests in that regard that you felt disturbing?" The Commonwealth objected on hearsay grounds. During the bench conference to discuss the objection, defense counsel argued that Barbara had specifically denied an interest in or fetish for male homosexual pornography and that Bruce's answer would go directly to Barbara's credibility. After some arguing, the trial court told defense counsel that Barbara would need to be called back to the stand and given the opportunity to deny the specific conduct or

23

statement before Bruce could testify in contradiction. Defense counsel then asked Bruce if Barbara ever "express[ed] an interest in any type of TV show." The Commonwealth again objected, and the trial court again told defense counsel that he "need[ed] to bring Barbara in. There is a proper way to do it."

Bruce's testimony ended shortly after, but the court told her that she was subject to being recalled. Neal never called Barbara back to the stand, and he did not recall Bruce or pursue that line of questioning any further. Regardless of whether further testimony by Barbara was actually necessary under our rules, the trial court did not exclude the evidence in its entirety. It merely required Neal to ask Barbara about the specific statements or events before he impeached her about those statements or events through Bruce. Neal chose not to do so. Because the evidence was not actually excluded, we decline to decide whether the trial court committed an error regarding this evidence.

## G. The trial court did not err in denying Neal's motion for a directed verdict.

Neal next argues that the trial court erred in denying his motion for a directed verdict. He argues primarily that the Commonwealth's case was made of circumstantial evidence that was inadequate to lead a reasonable juror to convict him. He further points to facts, such as the Commonwealth's expert witness's statement in one report that he "did not find any files that indicated that the user interacted with the video files listed in the indictment," to support his argument.

Our directed verdict standard was firmly established in *Commonwealth v. Benham*:

24

On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991). Neal was charged with multiple counts of possession of a matter portraying a sexual performance by a minor. Under KRS 531.335(1)(a), a person is guilty of this offense "when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she: (a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person." We have previously explained,

the essential elements are (1) knowingly having possession or control (2) of a visual depiction (3) of an actual sexual performance by a minor, and (4) having knowledge of its contents. The statute contains two separate mental states: the defendant must know the content of the images and videos (i.e., that they depict a sexual performance by a minor) and the defendant must knowingly possess the images or videos.

*Crabtree*, 455 S.W.3d at 396. In this case, the only element at issue is whether Neal knowingly possessed the images or videos.

Because Neal argues about the circumstantial nature of much of the Commonwealth's proof, in this case, we find it necessary to reiterate that "[i]t has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Commonwealth v. Goss*, 428 S.W.3d 619,

25

625 (Ky. 2014) (citing *Commonwealth v. O'Conner,* 372 S.W.3d 855, 857 (Ky. 2012) (citing cases going back to 1937)). This includes proof of knowledge. *Love v. Commonwealth,* 55 S.W.3d 816, 825 (Ky. 2001).

In this case, the Commonwealth presented sufficient evidence for a reasonable juror to find Neal guilty of possession of a matter portraying a sexual performance by a minor. The child pornography videos that were the basis of the indictment were found on the laptop computer under the user account "Scott," which was password protected. Some of those videos were written to the hard drive of the computer on a date and time when Barbara was at work. Further, an iPad, which was issued by Neal's employer and registered to him, was backed up onto the laptop. On the iPad, investigators found search histories involving "accidentally" downloading child pornography and how to protect a hard drive from forensic examination. A PDF version of "Modern Boylover Magazine" was found on the desktop computer in a previous installation of Windows under the "Scott" user account in a folder with various school-related files. Under the evidence as a whole, it was not unreasonable for a juror to find Neal guilty of possession of a matter portraying a sexual performance by a minor, and therefore, the trial court did not err in denying Neal's motions for a directed verdict.

## H. The trial court did not err in refusing to instruct the jury on innocent possession.

Neal's final argument is that the trial court erred in refusing to instruct the jury on innocent possession. This issue was preserved by Neal's request for the instruction and submission of a proposed instruction. We review a trial

26

court's decision of whether to give the jury a requested instruction for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

> This Court has previously held that
>
> under very limited circumstances, temporary, incidental possession of child pornography does not amount to a criminal offense under Kentucky law. Like the drug statutes, our child-pornography statute "allows for a defense of innocent possession where there is evidence that the possession came about incidentally and continued no longer than reasonably necessary to allow for lawful and appropriate disposal." If the proof shows the very limited circumstances of innocent possession, then a defendant would be entitled to a jury instruction laying out the defense.

*Crabtree*, 455 S.W.3d at 411 (citing *Commonwealth v. Adkins*, 331 S.W.3d 260, 267 (Ky. 2011)) (internal citation omitted). We explained that, for example, "the person who accidentally stumbles upon child pornography and immediately deletes it cannot be criminally liable, whereas the person who similarly encounters such material but then chooses to keep it with no intent to turn it over to law enforcement has violated the statute and committed the offense." *Id.*

In this case, there was no evidence that Neal "incidentally" or "accidentally" came to possess the images of child pornography. Further, there was no evidence presented that upon finding the images of child pornography, Neal immediately deleted them or attempted to turn them over to law enforcement. Accordingly, the trial court did not err in refusing to instruct the jury on Neal's defense of innocent possession.

27

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the Daviess Circuit Court in this matter.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Matthew James Baker
Matthew J. Baker Attorney

W. Currie Milliken
Wesley Vernon Milliken
Milliken Law Firm

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General