# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: OCTOBER 23, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0015-MR

MICHELLE BRAY                                                      APPELLANT

V.          ON APPEAL FROM KENTON CIRCUIT COURT
            HONORABLE PATRICIA M. SUMME, JUDGE
                    NO. 22-CR-00316-002

COMMONWEALTH OF KENTUCKY                                  APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Michelle Bray was convicted following a jury trial in Kenton Circuit Court of four counts of complicity to promoting a sexual performance by a minor, three counts of complicity to criminal abuse in the first degree, and one count each of complicity to sexual abuse in the first degree and human trafficking against a vulnerable victim in a continuing course of conduct (minor under 18). She received an aggregate sentence of thirty years' imprisonment and now appeals as a matter of right.[1] Following a careful review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

In late 2015, Bray and her five children lived in Edgewood, Kentucky, in a home owned by her ex-husband's parents. After meeting on an online platform and knowing him for a few months, Bray allowed her boyfriend,

---

[1] KY. CONST. §110(2)(b).

"Chip",[2] to move into her home.  During the time of their cohabitation, the pair often engaged in a BDSM-style sexual foot fetish known as "trampling" wherein sexual arousal or pleasure is obtained from being walked or stepped on, or from seeing other people, animals, or inanimate objects being walked or stepped on.  Many of their activities were recorded.

M.B.,[3] Bray's youngest daughter, was nine years old when Bray and Chip introduced her to their sexual trampling activities.  In January 2017, Chip began recording videos of the interactions.  M.B. and Bray, who were typically scantily clad, are generally standing, bouncing, and trampling on Chip.  Bray can be seen and heard instructing M.B. how to properly place her feet and to maintain her balance.  In many of the videos, the camera was positioned near floor level and angled to focus on Bray and M.B.'s buttocks and genital areas.  Other recordings are made from the side of the bed and show M.B. and Bray walking or bouncing upon Chip.  Many depict contact between M.B. and Chip's clothed penis.

Over the next several years, Chip began having regular and increasingly frequent sexual contact with M.B.  Between 2017 and 2022, he produced thousands of digital videos and images of their interactions which included numerous acts of sexual abuse, sodomy, rape, and sexual performances.  He stored these files on various electronic devices.  Along with these explicit

---

[2] In an effort to protect the privacy of the minor victims, we have chosen a pseudonym for the fiancé rather than using his name in this Opinion.

[3] We use initials to protect the privacy of the minor victims.  *See* Kentucky Rules of Appellate Procedure (RAP) 13(B).

photos and videos, Chip also recorded Bray trampling her disabled seven-year-old son as he directed the abuse. In still others, Chip can be heard directing M.B. to walk on the family's cat.

In January 2022, Bray's adopted son discovered the disturbing images and videos on Chip's computer and reported the finding to police. Based on the report, police obtained and executed a search warrant on Bray's home. Subsequent forensic examination of the electronic devices seized from the home uncovered a vast trove of evidence of illicit contact between Chip, Bray, and M.B. as well as the physical abuse of Bray's son and the family cat. At the conclusion of the investigation, the Commonwealth obtained a 92-count indictment charging Chip and Bray with a litany of crimes. Eight of the charges were against Bray for complicity to criminal abuse, complicity to sexual abuse, and complicity to promoting a sexual performance by a minor. Chip ultimately entered guilty pleas to the 84 counts which related directly to his criminal conduct. Bray was subsequently indicted on an additional charge of human trafficking. She proceeded to trial where she was convicted on all counts and received a sentence of thirty years' imprisonment. This appeal followed. Additional facts will be developed below as needed.

**ANALYSIS**

In seeking reversal, Bray argues she was: (1) entitled to a directed verdict on human trafficking; (2) entitled to a directed verdict on each count of complicity to promoting a sexual performance by a minor and complicity to sexual abuse in the first degree; (3) unduly prejudiced by the introduction of

3

evidence of other bad acts in violation of KRE[4] 404(b); (4) entitled to a lesser included instruction on the three counts of criminal abuse in the first degree; and (5) entitled to a mistrial based on the Commonwealth's statements in closing argument. She also contends that if none of the errors alone warrant relief, their cumulative effect does, in fact, mandate reversal. We disagree.

## I. Directed verdict unwarranted for human trafficking.

Bray first asserts the Commonwealth failed to produce competent evidence she subjected M.B. to commercial sexual activity or that she was aware M.B. was being filmed. Thus, she argues she was entitled to a directed verdict on the charge of human trafficking and the trial court erred in denying her motion for same. We disagree.

The standard for directed verdicts was firmly established in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

816 S.W.2d 186, 187 (Ky. 1991). "So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Taylor v. Commonwealth*, 617

---

[4] Kentucky Rules of Evidence.

S.W.3d 321, 324 (Ky. 2020). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

In pertinent part, the crime of human trafficking is outlined in KRS[5] 529.100[6] as follows:

> (1) A person is guilty of human trafficking when the person intentionally subjects one (1) or more persons to engage in:
>
> . . .
>
> (b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion.

"Commercial sexual activity" is defined in KRS 529.010(3) as "(a) Any sex act, for which anything of value is given to, promised to, or received by any person; (b) Participation in the production of obscene material as set out in KRS Chapter 531; or (c) Engaging in a sexually explicit performance[.]"[7]  Under KRS 531.010(7), "obscene" means "(a) To the average person, applying contemporary community standards, the predominant appeal of the matter, taken as a whole, is to prurient interest in sexual conduct; (b) The matter depicts or describes the

---

[5] Kentucky Revised Statutes.

[6] Since Bray's indictment and conviction, the statutory provisions of this section have been amended relative to the range of punishments and sex offender registration requirements.  However, the substantive provisions remained unchanged.

[7] Based on the facts of the case, Bray was not charged under a theory that anything of value was promised or changed hands, and the jury was not instructed on that portion of the statutory language.

sexual conduct in a patently offensive way; and (c) The matter, taken as a whole, lacks serious literary, artistic, political, or scientific value[.]" A "sexually explicit performance" is defined in KRS 529.010(15) as the performance of sexual conduct which involves:

> (a) Acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse, actual or simulated;
>
> (b) Physical contact with, or willful or intentional exhibition of, the genitals;
>
> (c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or
>
> (d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area, or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph, or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family[.]

Bray contends the Commonwealth failed to prove any of the activities were commercial in nature. She asserts there is a dearth of evidence that the explicit images and videos were being bartered in any way and thus, there was no element of commerce necessary for a conviction. As previously stated, Bray was neither indicted nor tried under a theory that her conduct violated KRS 529.010(3)(a), so the Commonwealth obviously and reasonably did not produce any evidence of an exchange of anything of value. Further, her bald and unsupported argument fails to acknowledge the statutory definition of "commercial sexual activity" encompasses far more than mere commerce. KRS

6

529.010(3)(b) and (c) require only participation in producing obscene material or engaging in a sexually explicit performance. These prohibited behaviors are inherently non-commercial. Contrary to Bray's assertions, the plain statutory language simply does not contain an explicit requirement of a commercial transaction to sustain a conviction and courts may not "add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Educ.*, 873 S.W.2d 575, 577 (Ky. 1994). We decline her invitation to do so.[8]

---

[8] The dissent's *sua sponte* foray into a double jeopardy analysis is both ill-conceived and incorrect. First, it is imprudent because "[i]t comes out of 'left field' as no such argument was ever raised in the trial court or even mentioned in the parties' briefs." *Shackles v. Commonwealth,* ___ S.W.3d ___, 2025 WL 2671582 at *17 (Thompson, J., dissenting). Second, it is inaccurate because, to support its position, the dissent improvidently expands a reading of the precise statutory language chosen by the legislature to include a universal requirement of an exchange of something of value in *all* cases of human trafficking—something explicitly not required under the statute as written. Respectfully, regardless of whether this Court agrees the wording of a statute, or the soundness of its underlying policy as determined by the legislature, any change in statutory language must come from the General Assembly and not this Court. Third, analysis regarding a potential double jeopardy violation under the *Blockburger* test and KRS 505.020 must focus solely on "whether each statute, on its face, contains a different element . . . and not the charging information, jury instruction, underlying proof needed, or the actual evidence produced at trial." *Kelly v. Commonwealth*, 655 S.W.3d 154, 162 (Ky. 2022). Here, the statutes clearly require different mental states, which alone would be sufficient differentiation under our precedent. But additionally, the promotion statute requires only a finding of sexual conduct by a minor while human trafficking, using the definition of commercial sexual activity at issue here, requires production of obscene material or a sexually explicit performance. While proof in this case clearly overlapped, Bray's convictions for human trafficking and promoting a sexual performance by a minor do not constitute multiple or duplicitous punishment for the same criminal act. The ills sought to be cured by the legislature under the two statutes are different, and each contains an element not required in the other. Thus, they are not the "same offense" for which principles of double jeopardy would prohibit additional prosecution and punishment. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 39 (Ky. 2011).

The Commonwealth presented more than a scintilla of evidence that Bray intentionally participated in producing obscene material of her minor daughter and also subjected M.B. to engage in sexually explicit performances. Specifically, the jury saw video evidence containing the intentional display of the genitals of both M.B. and Bray, the unclothed exposure of M.B.'s buttocks while Bray was standing next to her, and M.B. stepping on Chip's clothed penis while Bray was stepping on his torso. Thus, sufficient proof was presented that her actions satisfied the definitions of commercial sexual activity under KRS 529.010 and also human trafficking under KRS 529.100 to pass the low bar necessary to overcome a motion for directed verdict.

In addition, Bray alleges an absence of proof that she participated in or was aware of the numerous sexually explicit photos and videos Chip produced of his aberrant activities with M.B. mandated that the trial court grant her motion for a directed verdict. Her contentions are again unsupported by authority and lack merit.

The Commonwealth's proof revealed Bray introduced M.B. to Chip's sexual fetish, instructed her how to perform in a manner pleasing to him, appeared with M.B. in videos where both were scantily clad, and was well aware of the ongoing and escalating sexually explicit conduct between Chip and M.B. Chip's room was equipped with photography and videography equipment and lighting. Bray spent much time in his room, either using her computer, playing video games with the family, or engaging in sexual activities with Chip, many of which he recorded. Photographs of and love notes from

8

M.B. were posted on the walls and ceiling of Chip's room. Text messages from Bray to M.B. were introduced showing Bray's belief Chip wanted to be around M.B. more than herself and that he acted as though he and M.B. were "a couple."

Ample evidence was presented that Bray was aware recording was occurring and that Chip was having M.B. engage in multiple sexually explicit performances and producing obscene material. While she may not have been an active participant in many of the explicit activities, the Commonwealth presented sufficient proof she willfully permitted and subjected M.B. to commercial sexual acts perpetrated by Chip over numerous years. Thus, the trial court did not err in refusing to grant a directed verdict.

## II. Directed verdict unwarranted for complicity to promoting a sexual performance by a minor and complicity to sexual abuse.

Bray next asserts the trial court erred in denying her motion for a directed verdict on each count of complicity to promoting a sexual performance by a minor and complicity to sexual abuse. In support, she contends the four videos presented by the Commonwealth to support these charges fail to depict conduct which satisfies the definition of sexual conduct by a minor. She suggests that in all four videos the participants were clothed, M.B. did not make contact with any other person's intimate parts nor does any participant make contact with her intimate parts, and no sexual purpose can be gleaned from the recordings.

9

As before, the test for a directed verdict is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187. If the Commonwealth produces more than a mere scintilla of evidence of guilt, a directed verdict is unwarranted. *Taylor*, 617 S.W.3d at 324.

"A person is guilty of promoting a sexual performance by a minor when, knowing the character and content thereof, he produces, directs, or promotes any performance which includes sexual conduct by a minor." KRS 531.320.[9] In pertinent part, KRS 531.300 sets out the applicable definitions as follows:

> (2) "Performance" means any play, motion picture, photograph, dance, or any other visual representation or computer-generated image exhibited before an audience;
>
> (3) "Promote" means to prepare, publish, print, procure, or manufacture, or to offer or agree to do the same;
>
> (4) "Sexual conduct by a minor" means:
>
>> (a) Acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviate sexual intercourse, actual or simulated;
>>
>> (b) Physical contact with, or willful or intentional exhibition of the genitals;
>>
>> (c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or
>>
>> (d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture,

---

[9] An amendment to this statute in 2024 made minor changes to its wording. We quote the version in effect at the time of Bray's trial.

photograph, computer-generated image, or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family;

(5) "Sexual performance" means any performance or part thereof which includes sexual conduct by a minor[.]

"The 'promotion' statute is violated when one either actively or passively prepares, agrees, or brings forth through their efforts the visual representation of a minor in a sexual performance before an audience." *Little v. Commonwealth*, 272 S.W.3d 180, 185 (Ky. 2008) (quoting *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008)).  A sexual performance can be for an audience of one, *Clark*, 267 S.W.3d at 676, and need not be recorded to violate the statute.  Bray permitted and appeared in videos she knew were being filmed by Chip of a scantily clad M.B. whose bare buttocks were exposed in an obscene manner, which recordings also focused directly on the child's crotch area.[10]  She directed M.B. how to properly move for Chip's pleasure.  In one video, Bray can also be seen stepping directly on Chip's clothed penis while M.B. is holding her mother's hips.

Additionally, Bray was well-aware of Chip's admitted sexual fetish and the sexual gratification he received from trampling behavior, even referring to it as their "intimate thing," and her assertion now that the performances were not

---

[10]  We note the "willful or intentional exhibition of the genitals" described in KRS 531.300(4)(b) does not require the genitalia to be unclothed.  *See also United States v. Knox*, 32 F.3d 733, 744-45 (3rd Cir. 1994) (defining exhibition as "to show or display" and concluding "genitals or public area need not be fully or partially nude in order to be shown or put on display" for purposes of federal child pornography statutes).

11

sexual in nature is belied by her own admissions. Her intent may be inferred from her actions or the surrounding circumstances and from her own knowledge. *Little*, 272 S.W.3d at 186. Further, a "person is presumed to intend the logical and probable consequences of [her] conduct[.]" *Id.* (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 212 (Ky. 1997)). It is wholly unbelievable that Bray would be unaware Chip was filming M.B.'s bare buttocks and genital area given her own proximity to her daughter during the events and Chip's position below them while filming. It is likewise preposterous to assert Chip's apparent lack of an erection in any of the videos mandates a conclusion that the videos could not have been for sexual arousal, gratification, or other sexual purpose, especially based on Bray's own knowledge and experience with Chip's fetish. The Commonwealth clearly produced more than a mere scintilla of evidence that Bray was complicit in promoting a sexual performance and sexual abuse. A directed verdict was unwarranted, and the trial court did not err.

### III. No violation of KRE 404(b) occurred.

Next, Bray alleges she was unduly prejudiced by the introduction of photographic and video evidence relative to Chip's ongoing sexual abuse of M.B., acts of animal abuse in the home, and text messages between herself and Chip which outlined other bad acts, all in violation of KRE 404(b). She asserts the trial court's admission of this evidence constituted an abuse of discretion warranting reversal. Her assertions are without merit.

12

The general rule is well-established "that evidence of other crimes is not admissible to show that a defendant is a person of criminal disposition." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 333 (Ky. 2023) (citing KRE 404(a)). However, such evidence may be admissible when offered for a purpose other than criminal predisposition "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or . . . [i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(1)-(2). Because of the inherently prejudicial nature of this kind of evidence, KRE 404(b) has always been interpreted as being exclusionary in nature, and trial courts are expected to "apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994).

Trial courts are to assess the relevance, probativeness, and prejudice of the evidence of other crimes or wrongs when determining its admissibility. *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019). We review evidentiary rulings under KRE 404(b) for abuse of discretion. *Gasaway*, 671 S.W.3d at 331. An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, by offering the numerous explicit photos and videos complained of, the Commonwealth sought to introduce evidence of the repeated and ongoing

13

abuses of M.B. by Chip to show the trampling behaviors were sexually

motivated and to provide evidence of Bray's knowledge, intent, and motive. It

also intended the evidence to assist in showing Bray subjected her daughter to

engaging and participating in sexual performances and producing obscene

material as well as allowing her to be repeatedly sexually abused. Relative to

the videos depicting M.B. being forced to trample on the family cat, the

Commonwealth asserted they amplified the sexual motivation of the trampling

activities and further noted the loud screams would have alerted Bray to the

illicit conduct. In the challenged text messages between Chip and Bray, the

pair discussed the need to shave M.B.'s pubic hair before a dance recital.

During the exchange, Bray was made aware Chip intended to "trim" M.B.'s

pubic region. She raised no objection to him doing so and after being informed

the deed was completed, stated only "OK tell her good job." As before, the

Commonwealth indicated this evidence was relevant to Bray's knowledge of the

inappropriate and intimate contact between Chip and M.B. and her intent to

permit him to have continued and unfettered access to the child. The

Commonwealth argues all of the proffered evidence was relevant and probative

of the human trafficking and sexual performance offenses. We agree.

> Evidence of similar acts perpetrated against the same victim, we
> have noted many times, is "almost always admissible," under KRE
> 404(b), because it will almost always be significantly probative of a
> material issue aside from the defendant's character. *Noel v.
> Commonwealth,* 76 S.W.3d 923, 931 (Ky. 2002). *See also, e.g.,
> Harp v. Commonwealth,* 266 S.W.3d 813 (Ky. 2008); *Driver v.
> Commonwealth,* 361 S.W.3d 877 (Ky. 2012); *Lopez v.
> Commonwealth,* 459 S.W.3d 867 (Ky. 2015). That does not mean,
> of course, that evidence of prior acts against the same victim is

14

> automatically admissible—relevance to a material issue and probativeness must be shown, and the possibility of undue prejudice must still be considered—but our experience with these cases has taught that in most of them the *Bell* inquiry leads to admission.

*Jenkins v. Commonwealth*, 496 S.W.3d 435, 458 (Ky. 2016). "[P]rior acts committed against the same victim, similar to the conduct on trial, will often if not usually, have relevance other than merely establishing a propensity to commit the crime charged, thus falling within the KRE 404(b) exception." *Gullett v. Commonwealth*, 514 S.W.3d 518, 530 (Ky. 2017) (citing *Driver*, 361 S.W.3d at 884).

The evidence adduced at trial satisfied all three prongs of the *Bell* test. It was relevant to show the ongoing human trafficking involving M.B., Bray's knowledge of the continuing sexual abuses occurring in her home, and her intent to allow Chip to perpetrate the sexual assaults while videotaping and photographing them. The evidence was necessary for the Commonwealth to provide a full and unfragmented presentation of its case which revealed the totality of the crimes committed.

> "[W]here evidence is needed to provide a full presentation of the offense, or to 'complete the story of the crime,' . . . there is no reason to fragment the event by suppressing parts of the *res gestae*." *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012). Additionally, the prosecution is permitted to introduce evidence that would "tend to prove any element of the charged crime." *See United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) (cleaned up).

*Commonwealth v. Melton*, 670 S.W.3d 861, 866-67 (Ky. 2023) (footnote omitted).

15

Additionally, the evidence was probative to demonstrate Bray willfully allowed and subjected M.B. to engage in commercial sexual acts at Chip's hands, thereby tending to prove M.B. had, in fact, been the victim of human trafficking. It was likewise probative to show Bray was complicit in the production of obscene material of her minor daughter and her subjection of M.B. to engage in sexually explicit performances. "Evidence of collateral criminal conduct is admissible for purposes of rebutting a material contention of the defendant." *Brown v. Commonwealth*, 983 S.W.2d 513, 516 (Ky. 1999) (citations and internal quotation marks omitted). Moreover, as Bray was charged with complicity to promoting the use of a minor in a sexual performance and complicity to sexual abuse, it was incumbent upon the Commonwealth to prove that either she or Chip committed the underlying offenses and that Bray intentionally participated in or knowingly permitted those offenses. The evidence was sufficiently probative of Bray's conduct, knowledge, and intent to warrant admission.

While the evidence was clearly prejudicial, it was not unduly so. A risk of undue prejudice is inherent in prior-bad-acts evidence, and especially so in sex abuse cases. *Bell*, 875 S.W.2d at 890. Indeed, "[e]vidence of other bad acts is always prejudicial. . . . The rule is clear, however, that the probative value must be *substantially* outweighed by the prejudicial effect" to render the evidence inadmissible under KRE 404(b). *Leach v. Commonwealth*, 571 S.W.3d 550, 557 (Ky. 2019). Here, we cannot conclude any prejudice caused by the introduction of the challenged evidence outweighed its probative value. While

16

the videos, photos, and text messages contained graphic and disturbing sexual content revealing the abuses of a prepubescent child, that alone is insufficient to warrant their exclusion. None of the evidence was offered to show Bray's character or propensity to act in a certain way. Nor was it offered for any other improper purpose or merely to provoke an emotional response that would inflame the passions of the jurors. Rather, it was introduced as direct proof of the charged crimes and to rebut Bray's defense of ignorance of Chip's sexual activities with M.B. and her complete innocence of human trafficking.

Based on the foregoing analysis, we discern no abuse of discretion in the trial court's ruling relative to the KRE 404(b) evidence. It was relevant, probative, and not unduly prejudicial. Thus, this testimony was properly admitted.

### IV. Lesser included instructions unwarranted for criminal abuse.

For her next contention, Bray asserts the trial court should have given the jury her requested lesser included instructions on the three counts of criminal abuse in the first degree. The criminal abuse charges stemmed from three videos showing Bray stepping on her severely disabled son while being directed by Chip. Before the trial court, she theorized she behaved recklessly by failing to recognize she was causing the child pain and ceased the conduct once it became obvious the child was in discomfort. Based on her theory, Bray requested instructions on criminal abuse in the third degree which the trial court denied. She asserts the trial court's decision constituted an abuse of discretion. We disagree.

17

It is the duty of a trial court to instruct the jury on the entirety of the law of the case. *Daniel v. Commonwealth,* 607 S.W.3d 626, 644 (Ky. 2020) (citing RCr[11] 9.54(1)). This duty extends to any "lesser-included offenses" which are supported by the evidence. *Sasser v. Commonwealth,* 485 S.W.3d 290, 296 (Ky. 2016). Lesser included offenses are established by proof of "the same or less than all the facts required to establish the commission of the offense charged." *Id.* at 296-97 (quoting KRS 505.020(2)(a)). "Lesser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Taylor v. Commonwealth,* 671 S.W.3d 36, 41 (Ky. 2023) (quoting *Parker v. Commonwealth,* 952 S.W.2d 209, 211 (Ky. 1997)). Thus, "an instruction on a lesser included offense is required if the evidence would permit the jury to *rationally* find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Mash v. Commonwealth,* 376 S.W.3d 548, 559 (Ky. 2012) (quoting *Thomas v. Commonwealth,* 170 S.W.3d 343, 349 (Ky. 2005)). *See also Hopper v. Evans,* 456 U.S. 605, 611 (1982) (holding that due process requires an instruction on a lesser included offense only "when the evidence warrants such an instruction").

"A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial

---

[11] Kentucky Rules of Criminal Procedure.

18

from the bench in the courtroom." *Downs v. Commonwealth*, 620 S.W.3d 604, 613 (Ky. 2020) (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)). When the trial court's decision to give a jury instruction is "based on its view of the evidence," this Court reviews that decision for an abuse of discretion. *Sutton v. Commonwealth*, 627 S.W.3d 836, 853 (Ky. 2021) (citing *Exantus v. Commonwealth*, 612 S.W.3d 871, 888 (Ky. 2020)); *Downs*, 620 S.W.3d at 613. An abuse of discretion occurs when the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

Criminal abuse in the first degree is proscribed under KRS 508.100(1) as follows:

> (1) A person is guilty of criminal abuse in the first degree when he intentionally abuses another person or permits another person of whom he has actual custody to be abused and thereby:
>
> (a) Causes serious physical injury;
>
> (b) Places him in a situation that may cause him serious physical injury; or
>
> (c) Causes torture, cruel confinement or cruel punishment;
>
> to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

The elements of criminal abuse in the third degree are identical to criminal abuse in the first degree, varying only relative to the requisite mental state. While criminal abuse in the first degree requires an intentional mens rea, the third-degree offense criminalizes wanton conduct. Thus, criminal abuse in the third degree may, under appropriate circumstances, be a lesser-included

19

offense to criminal abuse in the first degree.  Those circumstances are not present in this matter.

The video evidence presented at trial revealed Bray intentionally stepped on her disabled, non-verbal, seven-year-old son.  The jury was also presented with a multitude of evidence of Bray trampling on Chip and stepping on other items for his pleasure.  The record is devoid of any evidence which would support an inference her acts of stepping on her son were unintentional, wanton, or reckless.  "[A] person is presumed to intend the logical and probable consequences of his conduct[,]" *Ratliff v. Commonwealth*, 194 S.W.3d 258, 275 (Ky. 2006), and "[i]ntent may be inferred from the act itself and/or the circumstances surrounding it."  *Davis v. Commonwealth*, 967 S.W.2d 574, 581 (Ky. 1998) (citations omitted).

Although Bray believes otherwise, the facts as presented to the jury would not permit it to "*rationally* find the defendant not guilty of the primary offense, but guilty of the lesser offense."  *Mash*, 376 S.W.3d at 559.  Thus, the trial court did not abuse its discretion in refusing to give the requested lesser included instruction to the jury.

## V. Commonwealth's closing argument did not warrant mistrial.

During its summation, the defense maintained the position that Bray was unaware of the ongoing sexual abuse of her daughter at Chip's hands because she was working, and Chip had taken opportunities to commit the abuses when no one else was at home.  In response, the Commonwealth reminded the jury that during opening statements and reiterated in closing

20

argument, the defense indicated Bray was forced to leave her children with Chip so she could wait tables. However, in her police interview, Bray stated she worked only two nights per week and was away from her children only an hour a day. The Commonwealth then asserted Bray was at home when the abuses occurred because many of the events occurred during the Covid-era shutdown of 2020 and restaurants were closed so she could not have been at work. Bray objected to this line of argument and a bench conference ensued.

At the bench, Bray told the trial court that certified work records from 2020 had been provided to the Commonwealth which showed she was, in fact, working. She argued the prosecution was making statements it knew to be false and was thus misleading the jury, thereby warranting a mistrial. The Commonwealth observed that although the defense had indicated it was going to do so, the work records were never introduced into the record. Nevertheless, it continued by stating:

> There were hundreds of pages of them. If you look at the work records, she is home when that's happening. Can't make that argument because nobody put them in. But what I'm saying is that he just argued in closing that [Chip] had to find the opportunity to abuse [M.B.] when no one was home. And that's not possible because of Covid. Covid shut the world down. That's what I'm saying.

The trial court noted the only evidence relative to Bray's work schedule which was admitted into evidence was her statement she was working two days per week in 2020. In the absence of contradictory evidence establishing a different timeline, the trial court found the matter was "open for argument" and denied the request for a mistrial.

21

Bray argues the trial court's ruling constituted an abuse of discretion. She contends the Commonwealth's statements were improper, intentionally misled the jury, and amounted to prosecutorial misconduct, thereby entitling her to a mistrial. We again disagree.

"It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citing *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002)). Additionally, "a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Id.* (quoting *Bray*, 68 S.W.3d at 383). The cause of the need for mistrial "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Id.* (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996)). We discern no abuse of discretion here as there was no manifest necessity of a mistrial.

This Court has defined prosecutorial misconduct as an "improper or illegal act . . . involving an attempt to . . . persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011) (citing Black's Law Dictionary (9th ed. 2009)). Misconduct can occur in a variety of forms, including improper closing argument. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). Any allegation of

22

misconduct must be viewed in the context of the overall fairness of the trial.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 742 (Ky. 2016).

For reversal to be justified, the prosecutorial misconduct must be "so serious as to render the entire trial unfair." *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004) (quoting *Stopher v. Commonwealth*, 57 S.W.3d 787, 805 (Ky. 2001)). We have repeatedly held that argument is not evidence and prosecutors may properly "comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987).

> In considering an allegation of prosecutorial misconduct in closing argument, the Court considers the arguments "as a whole" while remembering that counsel is granted wide latitude during closing argument. *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky. 2006) (quoting *Young v. Commonwealth*, 25 S.W.3d 66, 74-75 (Ky. 2000)). "The longstanding rule is that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn therefrom." *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010) (citing *East v. Commonwealth*, 249 Ky. 46, 60 S.W.2d 137, 139 (1933)).

*Murphy v. Commonwealth*, 509 S.W.3d 34, 50 (Ky. 2017)

We cannot conclude the Commonwealth engaged in prosecutorial misconduct. During opening statement and closing argument, Bray informed jurors she was unaware of the ongoing abuses in her home because she was away at work. In response, the Commonwealth turned to Bray's own statements regarding her work schedule and the impacts of the Covid pandemic on people's movements to create an inference Bray's assertion was not credible. The only evidence of record is Bray's own statement she was

23

working and away from her children one hour a day for two days a week. No proof was presented that she was working on even a single day when one of the hundreds of videotaped abuses of her daughter occurred. The Commonwealth made no improper inferences and Bray has not shown its statements were intentionally misleading. Further, we discern no attempt on the part of the Commonwealth to inflame or improperly influence the jury. The trial court properly denied Bray's request for a mistrial.

## VI. **No cumulative error occurred.**

Finally, Bray contends her convictions should be overturned due to cumulative error. We disagree.

Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error has been found "only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (citing *Funk v. Commonwealth*, 842 S.W.2d 476 (Ky. 1992)). Further, "[w]here . . . none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)).

As we have found no individual errors, there can be no cumulative error.

**CONCLUSION**

For the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Goodwine, Keller, and Nickell, JJ., concur. Conley and Thompson, JJ., jointly concur in part and dissent in part by separate opinion.

CONLEY AND THOMPSON, JJ., JOINTLY CONCURRING IN PART, DISSENTING IN PART: Respectfully, we must dissent in part. We agree that Michelle Bray's convictions for four counts of promoting a sexual performance by a minor, three counts of criminal abuse in the first degree and one count of complicity to sexual abuse in the first degree are all well founded and should be affirmed. However, we must dissent from the majority's determination that Bray's conviction for human trafficking[12]—which was dependent on her involvement in "commercial sexual activity"—was proper. Bray did not engage in any commercial activity.

Our General Assembly is entitled to craft its own statutory definitions, but such entitlement should not be allowed to go so far as to allow for definitions that are *the opposite* of what are otherwise known and understood terms in both the law and common usage.

---

[12] This is the second time Justice Thompson has determined that our human trafficking statutes have been improperly applied to criminal defendants and accordingly dissented. *See Jeffreys v. Commonwealth*, 706 S.W.3d 51, 56-61 (Ky. 2024)(Thompson, J., dissenting).

25

Lack of preservation is not at issue. *Cardine v. Commonwealth*, 283 S.W.3d 641, 652-53 (Ky. 2009). And even though Bray has not raised a double jeopardy argument before this Court, Bray preserved her argument that KRS 529.100(b) should be understood as requiring an element of commerce in all instances. This Court has a duty to interpret statutes in such a manner that it avoids a constitutional violation. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 96 (Ky. 2000) (internal quotation marks and citation omitted). Since upholding the conviction for human trafficking under these facts is a double jeopardy violation, we conclude this Court can and should consider the issue now.

Bray engaged in no commercial activity in the course of her crimes. Without there being any element of commercial activity, the facts underlying her conviction for human trafficking (of a minor) were substantively duplicative of those for which she was found guilty of promoting a sexual performance by a minor. Without the distinguishing element of separate "commercial activity," once Bray was convicted under Kentucky Revised Statutes (KRS) 531.320, her conviction under KRS 529.100 violated KRS 505.020 and the concomitant protections against double jeopardy found in both the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution.

Bray was convicted of four counts of promoting a sexual performance of a minor. Each count referenced a singular, distinct, video. KRS 531.320 "Promoting a sexual performance by a minor" states: "(1) A person is guilty of promoting a sexual performance by a minor when, knowing the character and

26

content thereof, he or she produces, directs, or promotes any performance [separately defined] which includes sexual conduct [separately defined] by a minor or computer-generated image of a minor.

The term "performance" which is found in both KRS 531.320 and KRS 529.010(3)(c) is defined as "any play, motion picture, photograph, dance, or any other visual representation or computer-generated image exhibited before an audience." KRS 531.300(2). KRS 531.300(9) defines "sexual conduct" as "acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviate sexual intercourse; or physical contact with the genitals, flagellation, or excretion for the purpose of sexual stimulation or gratification."

Comparing the promoting a sexual performance charges to the one charge of human trafficking for which Bray was convicted, KRS 529.100 states: "(1) A person is guilty of human trafficking when the person intentionally subjects one (1) or more persons to engage in: . . . (b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion."

Since it is agreed that Bray was **not** convicted for "[a]ny sex act, for which anything of value is given to, promised to, or received by any person," pursuant to KRS 529.010(3)(a), that means the only statutory "commercial sexual activity" in which she was alleged to have partaken would be for her "[p]articipation in the production of obscene material" or "[e]ngaging in a sexually explicit performance [separately defined]." KRS 529.010(3)(a) and (b).

27

The term "sexually explicit performance" found in KRS 529.010(3)(a) is defined at KRS 529.010(15) as:

"a performance of sexual conduct involving:

(a) Acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse, actual or simulated;

(b) Physical contact with, or willful or intentional exhibition of, the genitals;

(c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or

(d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area, or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph, or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family[.]

It should be readily apparent that both the element of a "performance which included sexual conduct" necessary for a conviction under KRS 531.320, and the element of a "sexually explicit performance" necessary for a conviction under KRS 529.100, are identical in their meaning even though their choice of defining verbiage differs.

The only arguable dissimilarity between the two statutes is KRS 531.320(1)'s language that the accused "knowingly[13] produced, directed, or promoted" a sexual performance, whereas KRS 529.100 criminalizes

---

[13] The term "knowingly" is defined in Kentucky as "[a] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." KRS 501.020(2).

28

"intentionally subjecting"[14] a victim to such a performance. We conclude that any distinction here is meritless. If an accused produces, directs or promotes a sexual performance they are simultaneously "subject[ing]" that victim to the same illegal conduct.

Neither of Bray's convictions required proof of a factual element the other did not. When the Commonwealth prosecuted Bray for engaging in "commercial sexual activity"—without any actual commercial activity occurring—the one "different element" contained in KRS 529.100 (some form of payment or remuneration) not found in KRS 531.320, was removed and both convictions mirrored each other.

The jury instructions used in Bray's trial for promoting a sexual performance by a minor each referenced a distinctly numbered video showing a "performance." However, the instruction for the charge of human trafficking did not reference *any* specific video, separate proof, or any distinct "sexually explicit performance."

Each of Bray's four jury instructions for complicity to promoting a sexual performance by a minor under KRS 531.320 stated:

> You will find the Defendant, Michelle R. Bray, guilty of Complicity to Promoting a Sexual Performance by a Minor under Count [ ] of the indictment and under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

---

[14] "Subjects" is not defined by our statutes, but an understanding of its meaning is clear given its context. Black's Law Dictionary defines the verb form of "subject" as "1. To cause to undergo some action, agent, or operation <to subject someone to a test>." *Black's Law Dictionary* (12th ed. 2024).

A. That in Kenton County on or about [date], and before the finding of the Indictment herein, she knowingly produced, directed or promoted a performance which included sexual conduct by MB in [video identification] MP4, or [Chip] did so with the Defendant intending that [Chip] do so by aiding him or standing by ready to aid him;

AND

B. That M.B. was at that time less than 16 years of age.

The relevant definitions were located separately in the jury instructions and provided: (1) "*Performance* – any play, motion picture, photograph or dance, or any other visual representation exhibited before an audience;" (2) "*Sexual Performance* – any performance or part thereof which includes sexual conduct by a minor;" and (3) "*Sexual Conduct by a Minor* – means: (a) Acts of masturbation . . . exhibition . . . (b) Physical contact with . . . genitals; (c) Flagellation or . . .; OR (d) The exposure, in an obscene manner, of the unclothed . . . male or female genitals . . . in any resulting motion picture, photograph, or other visual representation[.]"

Bray's jury instruction for human trafficking under KRS 529.100, stated:

> You will find the Defendant, Michelle R. Bray, guilty of Human Trafficking against a Vulnerable victim in a Continuing Course of Conduct[15] under Count 93 of the Indictment and under this

---

[15] This portion of the instruction is erroneous. Nothing in KRS 529.100 either states or indicates this statute was designed to prevent "a continuing course of conduct." Rather, the offense of human trafficking is completed once the perpetrator, "intentionally subjects one (1) or more persons to engage in: (a) Forced labor or services; or (b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion." No "continuing course of conduct" is necessary to commit this offense. It is only where a statute seeks to criminalize a "continuing course of conduct" that KRS 505.020(1)(c) comes into play which provides

30

Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Kenton County on or between January 14, 2017, through February 8, 2022, and before the finding of the Indictment herein, she engaged in a continuing course of conduct resulting in her intentionally subjecting M.B. to engage in **commercial sexual activity** no less than two (2) times (emphasis added);

AND

B. That at the time of all of these circumstances, M.B. was less than 18 years of age.

The instructions defined "Commercial Sexual Activity" as "*participation in the production of obscene material or engaging in a sexually explicit performance.*" The terms "performance" and "sexual performance," found in this definition were separately defined. *Supra.*

We can all agree that Bray appeared in and at times "directed" sex videos featuring her daughter, M.B. In sustaining Bray's conviction for human trafficking (requiring "commercial sexual activity"), the majority opinion determined Bray had "intentionally participated in producing obscene material" and "subjected M.B. to engage in sexually explicit performances." In sustaining Bray's four convictions for promoting a sexual performance by a minor, the majority states, "Bray permitted and appeared in videos she knew were being

that a defendant may not be convicted of more than one offense that occurred during a single course of conduct if "[t]he offense is designed to prohibit a continuing course of conduct[.]" Human Trafficking is unlike the most obvious offense involving a continuing course of conduct: nonsupport of a dependent. *See* Commentary to KRS 505.020.

31

filmed by Chip," and "she directed M.B. how to properly move for Chip's pleasure."

From the facts of this case, we cannot deduce any distinguishing factual or statutory element, being some act committed by Bray, which differentiates her one conviction for human trafficking from her four convictions for promoting a sexual performance. The majority's determination to not require any proof of "commercial activity" within our "commercial sexual activity" statute violates Bray's constitutional right to not be twice put in jeopardy for identical conduct.

In the seminal double jeopardy case of *Blockburger v. United States,* 284 U.S. 299, 304 (1932), the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Kentucky uses the *Blockburger* double jeopardy test. *See Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky. 1996) ("Thus, we return to the *Blockburger* analysis. We are to determine whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?").

If the Commonwealth convicts a defendant pursuant to KRS 529.100 for human trafficking of a minor without any proof of actual "commercial activity," and also obtains a conviction pursuant to KRS 531.320 for promoting a sexual

32

performance by a minor, both for the same alleged incidents, then there has been a double jeopardy violation because the statutes—as prosecuted—do not each contain a distinguishing separate element. Under these particular circumstances, the question before us is, does *each* statute "require proof of a fact the other does not?" Certainly, one action can result in two separate convictions but *only when **each** criminal statute "requires proof of an additional fact which the other does not."* (Emphasis added). *Blockburger*, 284 U.S. at 304. In Kentucky, KRS 505.020(1)(a) and (2)(a) codify this rule.[16] *Burge*, 947 S.W.2d at 809. If, however, as is the case here, the same facts prove the commission of two separate statutory offenses, then the double jeopardy clause mandates that while the defendant may be prosecuted under both offenses, he may only be convicted under one of the statutes. *Clark v. Commonwealth*, 267 S.W.3d 668, 675 (Ky. 2008).

Bray's actions were so disturbing and so vile that it was understandable, and wholly justified, for the Commonwealth to prosecute her for every possible unlawful act she had committed. The problem though is the labyrinthian language found in the multitude of statutes dedicated to protecting our

---

[16] KRS 505.020(1)(a) states: "When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when: (a) One offense is included in the other, as defined in subsection[.]"

KRS 505.020(2)(a) states: "A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when: (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"

Commonwealth's children from sexual abuse. In an effort to ensure that no form of sexual abuse is not punished, our statutes have created overlap.

Here, in her prosecution for human trafficking pursuant KRS 529.100, Bray was alleged to have engaged in "commercial sexual activity." KRS 529.010(3) provides: "Commercial sexual activity means: (a) Any sex act, for which anything of value is given to, promised to, or received by any person; (b) Participation in the production of obscene material as set out in KRS Chapter 531; *or* (c) Engaging in a sexually explicit performance[.]" (Emphasis added).

We note that this offense falls under KRS Chapter 529 titled "Prostitution Offenses" which implicates obvious commercial aspects of all such prostitution-related crimes. The majority acknowledges this fact and admits "KRS 529.010(3)(b) and (c) require only participation in producing obscene material or engaging in a sexually explicit performance. *These prohibited behaviors are inherently non-commercial.*" (Emphasis added).

A great many non-commercial forms of sexual activity are criminal, and we have a plethora of statutes criminalizing all forms of non-consensual sexual abuse as evident from the lengthy list of crimes for which Bray was indicted—all of which were not "commercial." The definition of the root term "commerce" and identification of all that is encompassed within the term, have been the subject of scholarly and legal debate for over two centuries. We already know what "commerce" is and what it is not. Our federal courts have repeatedly analyzed and discussed the term "commerce" due to the limitation on federal

authority found in the commerce clause. Constitution of the United States, Article I, Section 8, Clause 3. Regulation of Commerce.

In *United States v. Patton*, 451 F.3d 615, 624 (10th Cir. 2006), the history of our legal understanding of the term "commerce" was summarized as follows:

> The distinction between what is and is not commercial therefore lies at the heart of the Commerce Clause. Of course, like many constitutional terms, the meaning of "commerce" is neither obvious nor uncontested. The Supreme Court has warned against a definition under which "any activity can be looked upon as commercial," since this would obliterate the intended limits on federal power. The best historical scholarship indicates that in addition to its primary sense of buying, selling, and transporting merchandise, the term "commerce" was understood at the Founding to include the compensated provision of services as well as activities in preparation for selling property or services in the marketplace, such as the production of goods for sale."

(Citations omitted).

In *United States v. Lopez*, 514 U.S. 549, 560 (1995), the United States Supreme Court determined that possession of a firearm, in itself, cannot be "commercial" or "economic," concluding that the prohibition on firearm possession near a school "by its terms has nothing to do with 'commerce' or any sort of economic enterprise." That conclusion makes complete sense because the mere possession of a firearm does not constitute the buying, selling, production, or transportation of products or services, and is otherwise wholly non-commercial.

The otherwise self-evident criminal acts committed by Bray simply did not include "the buying selling, production, or transportation of products or

services, or any activity preparatory thereto" and this is why KRS 529.010(3) should not be read to criminalize non-commercial activities.

This leads to the statutory definitions themselves. It is true the General Assembly has authority to define its own statutory language, and this Court is typically highly deferential to it. "Where the legislature has defined a term or phrase . . . the courts are not free to ignore it." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 455 (Ky. 2016). Statutory definitions are free to depart from common usage. *Id.* But our constitution prohibits arbitrary exercise of power. Ky. Const. § 2. And it is recognized that "[w]hile courts are generally bound by statutory definitions, there are exceptions: 'If the definition *is arbitrary*, creates obvious incongruities in the statute, defeats a major purpose of the legislation or is *so discordant to common usage as to generate confusion*, the statutory definition should not be used.'" *In Re Greg H.*, 542 S.E.2d 919, 924 (W. Va. 2000) (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 228–29 (6th ed. 2000)) (emphasis added). That a statutory definition can be ignored in peculiar circumstances is also recognized in the secondary literature. 82 C.J.S. *Statutes* § 356; 73 Am. Jur. 2d *Statutes* § 130. As the Supreme Court of the United States once said, so we may now say: "Statutory definitions control the meaning of statutory words, of course, in the usual case. But this is an unusual case." *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949).

The General Assembly has created a definition of "commercial activity" which does not include any exchange or offer of exchange of value or

36

consideration; there is no intercourse between persons where one delivers a product or service (albeit an illegal and abhorrent product or service) in exchange for something else of value. KRS 520.010(3)(b) and (c); *See also Black's Law Dictionary,* Commercial 336 (11th Ed. 2019). Such sweeping definitions criminalizes conduct as "human trafficking" which is already criminalized as promoting a sexual performance by a minor. KRS 531.320(1) (promoting); KRS 531.100(3) (defining "promote").[17]

The failure of the General Assembly to substantially distinguish these several crimes from one another demonstrates the definition of "commercial sexual activity" to include innately non-commercial conduct is "so discordant to common usage as to generate confusion" such that it is arbitrary under Ky. Const. § 2. Moreover, it creates obvious incongruities with the statutory scheme as any competent defense attorney, especially after the publication of this decision, should be able to argue the double jeopardy violation when the Commonwealth charges these crimes together for the same conduct. The only difference between these crimes is in the degree of punishment. The same conduct that would be a Class D or C felony under KRS 531.335(3) or a Class B felony under KRS 531.320(2)(b), is now a Class A felony under KRS 529.100(2).[18]

---

[17] There is likely also a double jeopardy violation if there is a conviction for human trafficking that does not involve non-commercial conduct and possession of a matter portraying a sexual performance by a minor. KRS 531.335(1) (possession).

[18] And since KRS 529.100 establishes a greater punishment, it is almost certain that it will always be the preferred charge. Thus, the current statutory scheme as

It should be a given that the General Assembly's power to define words cannot be so expansive as to treat something contrary to its innate nature. Commercial activity and non-commercial activity are two distinct things. If a person buys beer at a store that is commercial activity. If a person makes beer in their own home for their own enjoyment that is non-commercial activity. The analogy holds for child pornography. Recording a sexual performance by a minor, in and of itself, is non-commercial activity and is already criminalized under our statutes. By including it in KRS 529.100 as a commercial activity we have a double jeopardy problem. But if we interpret KRS 529.100 as pertaining only to commercial activity—an exchange, promise of exchange, or offer of exchange for value—that eliminates the double jeopardy concern and comports with the broad legislative scheme, *i.e.*, KRS Chapter 531 is generally concerned with pornography while KRS Chapter 529 is generally concerned with prostitution. The Court can easily do this by interpreting KRS 529.100(3)(b) and (c) as also requiring "anything of value is given to, promised to, or received by any person[,]" KRS 529.100(3)(a). But that means Bray's conviction for

---

enforced by the Court creates a structural incentive for overcharging crimes. Take a person who could be prosecuted for possession or promotion of a matter portraying a minor in a sexual performance; then charge them with the greater offense of human trafficking, and all but force the individual to accept a plea deal for the lesser offense. In the federal courts it is a prosecutorial violation to overcharge defendants with hopes of a securing a plea deal. *United States v. Gallington*, 488 F.2d 637, 640 (8th Cir. 1973) ("Prosecutors must avoid mischarging, overcharging and threats of heavier sentences for those who do not plead guilty."). While plea deals inevitably involve negotiating charges down, the dangers of that system are well known. Shima Baradaran Baughman*, Subconstitutional Checks*, 92 Notre Dame L. Rev. 1071, 1118-21 (2017). We should not be incentivizing overcharging crimes, especially when a question of double jeopardy is involved.

human trafficking cannot be sustained and must be reversed for a failure of proof. The trial court should have granted Bray's motion for directed verdict

Accordingly, we dissent in part as we would reverse Bray's conviction for human trafficking as it cannot be established that she engaged in "commercial" sexual activity and, therefore, this conviction violates double jeopardy.

COUNSEL FOR APPELLANT:

Kayla D. Deatherage
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General